FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JAN 07 2011
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DENISE P. JACKSON,

                               Plaintiff,

        -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION and UNITED FEDERATION OF
TEACHERS (NEW YORK),

                               Defendants.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

06-CV-6173 (ENV)(LB)

**VITALIANO, D.J.**

Pro se plaintiff Denise P. Jackson commenced this civil rights action against defendants New York City Department of Education ("DOE") and the United Federation of Teachers ("UFT"), alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 20003 et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 et seq. ("ADEA"). By Memorandum and Order dated June 24, 2007, this Court dismissed the claims against the UFT pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice. DOE now moves for summary judgment on both claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion is essentially unopposed. For the reasons set forth below, the Court concludes that plaintiff's claims fail as a matter of law, and, accordingly, grants summary judgment in favor of DOE.

### I.   BACKGROUND

The following facts are drawn from the complaint and the submissions of the parties on defendant's motion, including defendant's statement of undisputed material facts made pursuant

1

to Local Civil Rule 56.1.[1] The facts are construed, as they must be in the summary judgment context, in the light most favorable to the nonmoving party. See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 456 (2d Cir. 2007).

Jackson, a former probationary teacher with DOE, alleges that her supervisors at Paul Robeson High School ("PRHS") discriminated against her on account of her race, religion, and age, by harassing her, firing her, and seeking to have her teaching certification revoked.

Plaintiff began her employment as a probationary English teacher at PRHS in or around March 2003. (See Walker-Diallo Decl., at 2.)[2] Her immediate supervisor was Assistant Principal Barbara Gatti, though Toby Ratz, Assistant Principal of Instructional Support Services, also had some supervisory responsibilities over Jackson. During the 2003-2004 academic year, plaintiff received a "satisfactory" rating, though she had received a counseling memorandum during the year for failure to adhere to DOE's Standardized Curriculum. (Id. at 2-3.) During the 2004-2005 academic year, plaintiff received an "unsatisfactory" rating after being observed three times by school administrators, on October 28, 2004, December 22, 2004, and February 18, 2005. (Id. at 3-5.) During this period, Gatti and Ratz recommended to plaintiff in writing that she meet with Gatti in an effort to help improve her lesson plans. (Id. at 3-5.) Jackson nonetheless failed to attend any of the meetings. (Id. at 3-5.) Ultimately, on April 6, 2005, Gatti informed plaintiff that her failure to attend the scheduled meetings constituted insubordination. (Id. at 5.)

---

[1] Although defendant complied with Local Rule 56.2 (Notice to Pro Se Litigant who Opposes Summary Judgment), Jackson has not provided any affidavits or other evidence to controvert the undisputed facts set forth in Defendant's Local Civil Rule 56.1 Statement. Therefore, the Court deems admitted, where supported by evidence, the facts set forth in the 56.1 Statement. See Giannulo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (uncontroverted facts in a Rule 56.1 statement will be deemed admitted where supported by evidence).

[2] References to "Walker-Diallo Decl." denote the declaration of Carolyn Walker-Diallo in support of defendant's motion for summary judgment.

In April 2005, Jackson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that PRHS discriminated against her on the basis of her race ("black"), religion ("Catholic"), national origin ("native New Orleanian"), age (49), and disability ("peri-menopausal").[3] In a "Dismissal and Notice of Rights" letter (also known as a "right-to-sue" letter) dated September 1, 2005, the EEOC informed Jackson that the facts she alleged did not establish a violation of Title VII or the ADEA. Jackson then filed a pro se complaint in this Court[4] against PRHS, Gatti, and Ira Weston (the principal of PRHS) to vindicate the very claims that were the subject of the EEOC's right-to-sue letter. By Memorandum and Opinion dated December 6, 2006, this Court dismissed Jackson's claims as being time-barred under 42 U.S.C. § 2000e-5(f)(1) and 29 U.S.C. § 626(d) because her complaint was not filed within 90 days of receipt of the EEOC letter and she did not provide a sound basis for the Court to toll the limitations period.

On November 20, 2006, plaintiff filed the instant pro se action, this time asserting claims against DOE and the UFT. Although it is unclear, some of Jackson's general claims of discrimination in her current complaint appear to refer to incidents occurring prior to the filing of her EEOC complaint in April 2005. However, the crux of this action is that plaintiff was retaliated against after filing the charge of discrimination with the EEOC in April 2005. Specifically, after plaintiff filed her EEOC complaint, she was given an "unsatisfactory" rating for 2005, but that rating also followed peer review of her class on May17, 2005, May 26, 2005, and May 27, 2005 by different school administrators. (Walker-Diallo Decl., at 5-7.) Plaintiff

---

[3] More specifically, Jackson alleged that Gatti (named in the charge), had subjected her to "different terms and conditions of employment in regards to time and attendance, bathroom breaks, assignments, and assistance" and that the Principal of PRHS later failed to address her complaints regarding these incidents.

[4] See Docket 06-CV-1255.

3

appealed the unsatisfactory ratings by filing a grievance. (Id. at 7.) On August 29, 2005, Jackson's service as a probationary teacher was discontinued. (Id.) Jackson appealed this decision to DOE. On a different plane, she filed a second charge of discrimination with the EEOC on March 28, 2006, alleging that she was retaliated against for filing a previous charge of discrimination. (Id. at 8.) On July 11, 2006, the decision to discontinue plaintiff's probationary service was affirmed by DOE, and on August 3, 2006, DOE revoked plaintiff's New York City DOE certification. On August 30, 2006, the EEOC issued a right-to-sue letter concerning plaintiff's retaliation claims, finding that there "[was] no indication of a violation of any law enforced by the EEOC." (Id. at 9.)

## II. DISCUSSION

### A. Summary Judgment Standard

The Court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but rather to "determine whether there are issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (internal quotation marks omitted) (emphasis in original). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see, e.g., Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005), and the Court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion. See, e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004); Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 33 (2d Cir. 1997) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed

4

issue of material fact, the burden shifts to the nonmoving party. See Fed. R. Civ. P. 56(e). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986) (internal citations omitted).

The Second Circuit has often cautioned that courts should be "chary" in granting summary judgment in employment discrimination cases, where intent of the employer is usually a central factual issue. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000) (citing Chertkova v. Conn. Gen. Life Ins., 92 F.3d 81, 87 (2d Cir. 1996)); Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). "[E]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law." Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999). Notwithstanding, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp, 118 F. 3d at 110; see also Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994) ("[S]ummary judgment remains available to reject discrimination claims in cases lacking genuine issues of material

fact.")).

Finally, when, as here, a party is proceeding pro se, a court must read that party's supporting papers "liberally . . . and interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1998); accord Soto v. Walker, 44 F.3d 169 (2d Cir. 1995).

## B. Claims Previously Adjudicated and Claims Prior to June 1, 2005

In a previous action, Jackson v. Paul Robeson High School et al., 06-CV-1255, plaintiff alleged that she had been discriminated against on account of her race, color, religion, and age. Defendants moved to dismiss the complaint on the grounds that plaintiff failed to file the lawsuit within 90 days of receiving the right-to-sue letter from the EEOC and that plaintiff failed to state a claim upon which relief could be granted. By Memorandum and Order dated December 6, 2006, this Court granted defendants' motion to dismiss. Therefore, as a preliminary matter, any claims raised in the instant action that relate to plaintiff's April 25, 2005 EEOC charge of discrimination are barred because they were previously adjudicated.[5]

Additionally, under Title VII and the ADEA, a plaintiff may only assert claims involving acts alleged to have occurred within 300 days of filing a discrimination complaint with a state or local agency. See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002). Jackson filed a second charge with the EEOC on March 28, 2006. As such, she can only raise claims of retaliation which occurred after June 1, 2005, 300 days before she filed her second charge with the EEOC. Any claims occurring prior to June 1, 2005 that were not adjudicated in her prior action before this Court are therefore also dismissed.

---

[5] While it is unclear, it appears that plaintiff is alleging discrete incidents of discrimination and/or retaliation which occurred prior to April 25, 2005. For example, her complaint alleges that she "was given observations on the days before a holiday or vacation and on Fridays," and "in the fall/2004, [she] received [her] first unsatisfactory rating."

## C. Remaining Claims

Based on the complaint and defendant's 56.1 statement, the litany of remaining incidents of alleged retaliation include: (1) the discontinuation of plaintiff's service on August 29, 2005; (2) placing plaintiff on the ineligible list on February 6, 2006; (4) the affirmation of the decision to discontinue plaintiff's service on July 11, 2006; and (4) the revocation of plaintiff's New York City teaching license on August 3, 2006.

### 1. Title VII

Jackson claims that she was retaliated against because she appealed her unsatisfactory rating and filed complaints of discrimination and retaliation with the EEOC. However, this claim fails as a matter of law. Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), or to retaliate against any employee who complains about a Title VII violation. See id. § 2000e-3(a). In a Title VII action, the plaintiff always bears the ultimate burden of proof to show that the employer acted, at least in part, from a motivation that was discriminatory or retaliatory. See Norton v. Sam's Club, 145 F.3d 114, 118-19 (2d Cir. 1998). Courts evaluate Title VII retaliation claims using the McDonnell Douglas three-step burden-shifting analysis. See generally McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). First, in line with that analytical framework, a plaintiff must establish a prima facie case showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001); see Reed v. A.W.

7

Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996). In determining whether this initial burden has been satisfied, a district court's role is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive. See Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). "If a plaintiff sustains the initial burden, a presumption of retaliation arises. In turn, under the second step of the burden-shifting analysis, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. Finally, as for the third step, once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (internal quotation marks and citations omitted).

Defendants argue that plaintiff has failed to satisfy the first (protected activity) and fourth (causation) prongs of her prima facie retaliation case. To begin, defendant contends that plaintiff's appeal of her unsatisfactory rating and her related grievance do not constitute protected activity. But, Jackson's complaint, liberally construed, annexes her retaliation claim to the protected activity of filing a discrimination complaint with the EEOC in April 2005, not her internal grievance. Filing a formal complaint with an agency—here, the EEOC—is certainly protected activity sufficient to meet the first prong. See Whaley v. City Univ. of N.Y., 555 F. Supp. 2d 381, 405 (D.N.Y. 2008) (citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993); Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991); Hollander v. American Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990); DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir. 1987), cert denied, 484 U.S. 965, 108 S. Ct. 455 (1987)) (protected activity can take the form of "filing a formal complaint with an agency or filing a lawsuit").

8

Moreover, the Second Circuit has held that "Congress sought to protect a wide range of activity in addition to the filing of a formal complaint." Whaley, 555 F. Supp. 2d at 405 (cataloging examples including letter to customer of employer complaining about inadequacies in employer's affirmative action program, boycotting and picketing of store, stating repeatedly in public and private that university engaged in discriminatory employment practices).

Nonetheless, Jackson has not made out a prima facie case of retaliation because the record contains no evidence at all of a causal connection between her discrimination complaints to the EEOC and any adverse employment decision. "[C]ausation can be established by showing that the retaliatory action was close in time to the protected activity; that other similarly situated employees were treated differently; or with direct proof of retaliatory animus." Reed, 95 F.3d at 1178 (citing Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990); DeCintio, 821 F.2d at 115).

Timing by itself does not support a finding of causation in this instance. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)). More to the point, "[i]n general, when more than three months have passed between a protected activity and an alleged retaliatory response, the Second Circuit has deemed the evidence insufficient to raise an issue of fact concerning causation." Jimenez v. City of New York, 605 F. Supp. 2d 485, 528 (S.D.N.Y 2009). See also Breeden, 532 U.S. at 273-74 ("the cases that accept mere temporal proximity between an employer's knowledge of the protected activity and an adverse employment action as sufficient

9

evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'") (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (4-month period insufficient))). Jackson filed her first EEOC complaint on April 25, 2005, approximately four months before her probationary service was discontinued on August 29, 2005. While this is close to the three-month period sanctioned by the Second Circuit, on its own it is insufficient to raise an issue of material fact with respect to causation.

In fact, even given the timeframe, the record before this Court strongly requires the opposite finding. Where an employer is considering the adverse employment action in question before the protected activity occurred, "their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Breeden, 532 U.S. at 272. By April 25, 2005, when Jackson filed her EEOC complaint, she had already been observed three times by a number of school administrators and had received "unsatisfactory" ratings on all three occasions. She had also failed to attend any of the scheduled counseling meetings with her supervisor to review her lesson plans and had been informed in writing that her failure to attend the meetings constituted insubordination. Her subsequent termination, though it occurred after the filing of her first EEOC complaint, was clearly previously contemplated based on her performance and not in retaliation for her complaint. Additionally, plaintiff's complaint is devoid of any allegation to support an inference of retaliation. Lastly, though Jackson alleges without detail that she was contacted by representatives of the UFT informing her that "[she] could return to work if she cease[d] and desiste[d] with the EEOC complaint" (Compl. at 3), there are no allegations, much less evidence, that any school administrator or DOE employee made similar statements. Plaintiff's oblique conclusory

assertions aside, there is absolutely no direct evidence or reasonably drawn inference of retaliatory intent in the record. Consequently, plaintiff's retaliation claim fails at the first step of the McDonnell Douglas analysis.

In any event, even if Jackson could make the requisite prima facie showing of retaliation, her claim would still fail. Defendant has articulated legitimate, nondiscriminatory reasons for the challenged employment actions. Beginning in March 2004, plaintiff had been informed by several school administrators that her performance was deficient. She failed to take the necessary steps to rectify the problems, and, as a result, her service was discontinued and her license revoked. By the time the adverse employment decisions were made, plaintiff had been given a total of six unsatisfactory ratings. Plaintiff herself admitted on deposition that Weston, who reviewed her performance and rated her unsatisfactory for the 2004-2005 academic year, did not discriminate against her. Moreover, nothing in the record suggests that the individuals who ultimately made the decision to discontinue her service and revoke her license were even aware of her EEOC complaint at the time they made the respective decisions. Ultimately, plaintiff has not provided any basis for the Court to infer that defendant's reasons for its actions were pretextual, nor is there any record evidence to show that retaliation was a "substantial reason for the [alleged] adverse employment action[s]." Jute, 420 F.3d at 173. There being no material fact in dispute, summary judgment for the defendant is appropriate on Jackson's Title VII claims.

2. ADEA

Plaintiff also alleges in her complaint that DOE's actions violated the ADEA, which prohibits age discrimination in employment decisions. The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . .

because of such individual's age." 29 U.S.C. § 623(a)(1). In Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343 (2009), the Supreme Court clarified that the burden of persuasion for ADEA claims is more onerous than for other civil rights claims. Whereas Title VII permits plaintiffs to establish discrimination by showing that their inclusion in a protected class "was simply a motivating factor" in an employer's adverse employment action, id. at 2349, "under the plain language of the ADEA, an employee bringing a disparate treatment claim must prove by a preponderance of the evidence that age was the 'but-for' cause behind the employer's adverse decision, and not merely one of the motivating factors." Hrisinko v. N.Y.C. Dep't of Educ., 369 Fed. Appx. 232, 234 (2d Cir. 2010) (citing Gross, 129 S. Ct. at 2350). The Court finds that there is no material fact in dispute; Jackson's age was not a motivating factor—much less the "but for" cause—of defendant's decision to terminate her employment.

In order to establish a prima facie case of age discrimination in violation of the ADEA, plaintiff must show: (1) that she was within the protected age group (more than 40 years old); (2) that she was qualified for his position; (3) that she experienced adverse employment action; and (4) that such action occurred under circumstances giving rise to an inference of discrimination. See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010) (citing Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000)). Assuming, arguendo, that Jackson can establish the first three elements of her prima facie case of age discrimination, for the same reasons discussed in Part II.C.1, she fails at the fourth element because she cannot demonstrate that the circumstances surrounding the adverse employment action give rise to an inference of age discrimination. Plaintiff's age discrimination claim is in fact completely unfounded. There is simply no evidence indicating that school administrators harbored any age-based animus or that they made any employment decisions based on such attitudes. The only facts alleged in the

complaint that could liberally be construed as raising an ADEA claim are that plaintiff "received an unsatisfactory rating on [her] 50th birthday and was told that [her] discontinuance was recommended" and that her "supervisor gave [her] classes to [a] younger teacher . . . ." (Compl. at 5, 6.) Nothing in the record supports plaintiff's conclusory accusations that she was discriminated against because of her age. To the contrary, there is solid factual support for defendant's assertion that plaintiff was terminated and her license revoked because of her unsatisfactory performance.

While it is unclear whether Jackson is also alleging a retaliation claim against DOE under the ADEA, such a claim would fail as a matter of law. Retaliation claims under the ADEA are also analyzed using the McDonnell Douglas burden-shifting framework discussed in Part II.C.1. Gorzynski, 596 F.3d at 110. Therefore, for the same reasons that Jackson's retaliation claim fails under Title VII, any retaliation claim under the ADEA also fails. In sum, even considering all the facts in the light most favorable to plaintiff, her ADEA claim must be dismissed on DOE's motion for summary judgment.

### III. CONCLUSION

For all the reasons discussed above, defendant's motion for summary judgment is granted.

The Clerk of the Court is directed to enter judgment for defendants and close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
January 6, 2011

ERIC N. VITALIANO
United States District Judge